# In the United States Court of Federal Claims

Sub-Master Docket No. 17-9001L

(Filed: December 15, 2021)

| | |
|---|---|
| IN RE UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Motion to certify class; timeliness; Rule 23 criteria |
| THIS DOCUMENT APPLIES TO:<br><br>ALL UPSTREAM CASES | |

　　　　Daniel H. Charest and E. Lawrence Vincent, Burns Charest LLP, Dallas, Texas, Charles Irvine, Irvine & Conner PLLC, Houston, Texas, and Edwin Armistead Easterby, Williams Hart Boundas Easterby, LLP, Houston, Texas, Co-Lead Counsel for Upstream Plaintiffs.

　　　　Kristine S. Tardiff, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Todd Kim, Assistant Attorney General, and Laura W. Duncan, Frances B. Morris, and Gregory M. Cumming, Trial Attorneys, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

　　　　Vuk S. Vujasinovic, VB Attorneys, PLLC, Houston, Texas, filed a brief for the Banker plaintiffs. With him on the brief were Brian Beckom and Job Tennant, VB Attorneys, PLLC, Houston, Texas.

　　　　Zheng Luo, Katy, Texas, filed a brief *pro se*.

　　　　Ligang Lei, Katy, Texas, filed a brief *pro se*.

## OPINION AND ORDER

　　　　LETTOW, Senior Judge.

　　　　Before the court is plaintiffs' motion to certify a class limited to liability issues pursuant to Rule 23 of the Rules of the Court of Federal Claims ("RCFC") in this Fifth Amendment taking case. Plaintiffs—property owners upstream of the Addicks and Barker Dams in the Houston, Texas area that experienced flooding during Tropical Storm Harvey—argue that the bellwether approach to case management employed throughout the past years of litigation is inferior to class certification. This motion arises after the conclusion of the liability phase of the trial of

bellwether plaintiffs using the bellwether test-case approach.  *See generally* Pls.' Mot. for Class Certification ("Pls.' Mot."), ECF No. 397; Pls.' Suppl. Br. ("Pls.' Suppl."), ECF No. 404; and Pls.' Reply, ECF No. 408.  The government counters that the motion for class certification comes too late and that plaintiffs should otherwise be denied certification on the merits.  *See* Def.'s Opp'n to Pls.' Mot. for Class Certification ("Def.'s Opp'n"), ECF No. 405.  Plaintiffs' motion is DENIED both because of the timing of their request and their failure to satisfy the criteria of RCFC 23.

## BACKGROUND

These cases arise from a flooding event:

> After making landfall in August 2017, Tropical Storm Harvey ("Harvey") doused Houston with an average of 33.7 inches of rain over a four-day period.  Many properties, including over 150,000 homes, flooded during the storm.  Those affected included private property owners within the Addicks and Barker Reservoirs, west of Houston, upstream of the federally designed, built, and maintained Addicks and Barker Dams.  During Harvey, the Addicks and Barker Dams collected storm water in their respective reservoirs [extending beyond government-owned land,] causing [private] properties [upstream but] within the reservoir to flood from the impounded water.

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 146 Fed. Cl. 219, 227 (2019).

"The first complaint relating to Harvey and the Addicks and Barker Dams was filed on September 5, 2017.  Hundreds of such cases followed."  *In re Upstream Addicks & Barker*, 146 Fed. Cl. at 228 (internal citation omitted).  Initially, Chief Judge Braden of the court ordered those plaintiffs who sought class certification to move for certification by November 9, 2017.  *See Y and J Properties, Ltd. v. United States,* 134 Fed. Cl. 465 (2017).  On November 20, 2017, however, the Chief Judge relieved plaintiffs of the class certification deadline.  *See* Order of Nov. 20, 2017 at 2, No. 17-3000, ECF No. 68.  Instead, after soliciting case management suggestions from plaintiffs and defendant, "the Chief Judge . . . issued Management Order No. 1, consolidating these cases, and all related later-filed cases, within one master docket.  The Chief Judge then bifurcated the issues of liability and damages, initially setting a schedule to deal with liability.  Subsequently, [on December 5, 2017,] the Chief Judge divided the Master Docket into two sub-master dockets—one for downstream properties and, pertinent here, one for upstream properties."  *In re Upstream Addicks & Barker*, 146 Fed. Cl. at 228 (internal citations omitted).

In the upstream cases, the court applied the principles of multi-district litigation under 28 U.S.C. § 1407 and conducted pretrial proceedings under the guidance of 28 U.S.C. § 1407(b).  "In the spring of 2018, thirteen plaintiff properties were designated to serve as bellwethers for the [upstream] cases."  *In re Upstream Addicks & Barker*, 146 Fed. Cl. at 228.  "A ten-day trial was held in Houston, Texas, commencing on May 6, 2019, regarding the liability of the United States for the thirteen test properties."  *Id.*  In December 2019, "the court [found] the government to be liable for a taking of a flowage easement on the [bellwether] properties."  *Id.*

2

Nearly two years later, as the parties engaged in discovery in preparation for the just compensation phase of the trial of the claims of bellwether plaintiffs, plaintiffs moved for class certification on September 24, 2021. *See* Pls.' Mot. Following a supplemental briefing order, the matter is fully briefed. The court received additional briefs from one of the bellwether property owners raising questions about, but otherwise consistent with, certification, ECF No. 406, and from a *pro se* plaintiff, Zheng Luo, opposing certification on adequacy of counsel grounds, ECF No. 412. *See also* Pls.' Reply to *Pro Se* Opp'n, ECF No. 413; Def.s' Reply to *Pro Se* Opp'n, ECF No. 414. Another *pro se* plaintiff, Ligang Lei, filed a brief supporting certification, ECF No. 416. A hearing was held on November 29, 2021.

## STANDARD FOR DECISION

Class actions are governed by RCFC 23.[1] To merit class certification,

> a putative class representative must demonstrate: (i) numerosity—that the proposed class is so large that joinder is impracticable; (ii) commonality—that there are common questions of law or fact that predominate over questions affecting individual prospective class members and that the government has treated the prospective class members similarly; (iii) typicality—that his or her claims are typical of the proposed class; (iv) adequacy—that he or she will fairly represent the proposed class; and (v) superiority—that a class action is the fairest and most efficient method of resolving the suit.

---

[1] Rule 23(a) and (b), in whole, require the following:

**(a) Prerequisites.** One or more members of a class may sue as representative parties on behalf of all members only if: **(1)** the class is so numerous that joinder of all members is impracticable; **(2)** there are questions of law or fact common to the class; **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and **(4)** the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** A class action may be maintained if RCFC 23(a) is satisfied and if: **(1)** [not used]; **(2)** the United States has acted or refused to act on grounds generally applicable to the class; and **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: **(A)** the class members' interests in individually controlling the prosecution of separate actions; **(B)** the extent and nature of any litigation concerning the controversy already begun by class members; **(C)** [not used]; and **(D)** the likely difficulties in managing a class action.

RCFC 23(a), (b) (brackets in original).

*Gross v. United States*, 106 Fed. Cl. 369, 373 (2012) (citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005)). These requirements are conjunctive, *id.* (quoting *Barnes*, 68 Fed. Cl. at 494), and require a showing by a preponderance of the evidence, *id.* (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (additional citations omitted)).

## ANALYSIS

Plaintiffs' class certification motion is limited to liability, alone. Pls.' Mot. at 1.[2] The motion raises the threshold question whether it is appropriate to move for certification after having succeeded on the merits at the liability phase of the trial. *See* RCFC 23(c)(1)(A) ("*At an early practicable time* after a person sues as a class representative, the court must determine by order whether to certify the action as a class action." (emphasis added)). While the court answers that question in the negative, it concludes that a complete analysis of plaintiffs' motion under RCFC 23 is nonetheless necessary. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984) ("But we need not, and do not, decide whether these [timeliness] considerations alone were sufficient to support the [trial court's] denial of certification, inasmuch as the court . . . also grounded its decision upon its view that plaintiffs' claims were not suitable for resolution on a classwide basis.").

### A. Class Certification After Trial on Liability

The timing of a class certification motion by itself is not often an independent ground to deny class certification, though it is relevant in the context of the multi-prong analysis required by Rule 23. *See Trevizo v. Adams*, 455 F.3d 1155, 1161 (10th Cir. 2006) (affirming that the fact that the "lawsuit had been pending for five years before the plaintiffs moved for class certification" did "not create an independent basis for denying a party's motion" to certify a class under Rule 23 of the Federal Rules of Civil Procedure).[3] "Rather, the delay [in moving for class certification] will be evaluated in light of the circumstances of the case and certification will be denied only when the late timing of the determination may cause prejudice or unduly complicate the case." 7AA Wright, Miller & Kane, *Federal Practice and Procedure: Civil*, § 1785.3 (3rd ed., 2008, updated 2021) (collecting cases).

Seven U.S. Courts of Appeals have treated trial as a bright line after which a class certification motion is presumptively inappropriate, *see In re Citizens Bank, N.A.*, 15 F.4th 607, 618 n.11 (3d Cir. 2021) (collecting cases from the 1st, 2d, 4th, 7th, 8th, 10th, and 11th Circuits), while some have tolerated it so long as the defendant consents, *id.* at 618-19 n.12 (collecting cases from the 3d, 5th, 9th, and D.C. circuits). The U.S. Court of Appeals for the Federal Circuit does not appear to have squarely addressed the issue, although it acknowledges that some merits decisions may precede class certification. *See, e.g., Charleston Area Med. Ctr., Inc. v. United States*, 940 F.3d 1362, 1372 (Fed. Cir. 2019) (holding that a trial court commits no error when it

---

[2] Plaintiffs categorically and explicitly state, "[c]ertification is sought only as to the question of liability." Pls.' Mot. at 1.

[3] Inasmuch as RCFC 23 mirrors Fed. R. Civ. P. 23, the rules should be interpreted *in pari materia*.

considers the merits of a motion to dismiss or a motion for summary judgment that moots a motion for class certification under RCFC 23); *Romero v. Am. Postal Workers Union*, 178 F.3d 1310, 1998 WL 846826, at *2-3 (Fed. Cir. Dec. 4, 1998) (holding that the trial court committed no error when it considered merits of remand before class certification because the outcome of the merits analysis undermined the commonality prong of Fed. R. Civ. P. 23).  In one instance, this court's predecessor dealt with a similar question when it rejected plaintiffs' request to defer class certification until after the final judgment on the merits.  *See Saunooke v. United States*, 8 Cl. Ct. 327, 331 n.4 (1985) ("Case law interpreting this sentence [(from Rule 23 that class certification should be decided 'as soon as practicable')] dictates the well-settled proposition that class certification should precede any determination on the merits of a case." (citing *Otto v. Variable Annuity Life Ins. Co.*, 98 F.R.D. 747 (N.D. Ill.1983), and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)); *see also Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 351-52 (2011) ("The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.,* jurisdiction and venue, is a familiar feature of litigation." (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001)).

   Plaintiffs contend that their class certification motion is "neither too early nor too late" because "the parties have appeared to treat the proceedings as being adjudicated on behalf of a class," Pls.' Suppl. at 12 (quoting Wright, Miller & Kane § 1785.3), and because the class complaint was chosen as the master complaint, *id.*  The remainder of plaintiffs' timeliness arguments focus on the problems that would have followed if they had chosen to delay their motion until even later, as well as the benefits that notice to the proposed class could provide.  *Id.* at 13-15.  The government responds that the appropriate time to decide class certification was during case management discussions with the Chief Judge.  Def.'s Opp'n at 9.  It continues that permitting post-trial class certification would enable "one-way intervention," a discouraged practice.  *Id.* at 10-11 (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974)).  Finally, the government argues that plaintiffs' motion is "a *de facto* attempt to circumvent the acknowledged rule that 'nonmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues.'"  *Id.* at 14 (quoting *United States v. Mendoza*, 464 U.S. 154, 162 (1984)).  In their reply, plaintiffs contend that their motion is timely because the first Harvey-related complaint filed was styled as a class action, Pls.' Reply at 1, the parties recognized the potential for the bellwether approach to evolve into a class action, *id.* at 2-3, commonality prevails over any collateral estoppel defense that the government might raise, *id.* at 4, discovery was not limited exclusively to bellwether issues, *id.* at 4-5, and the timing of class certification is ultimately subject to the court's discretion, *id.* at 5.

   The court concludes that a trial on the merits of liability is a line after which moving for class certification is presumptively inappropriate.  The prior version of Fed. R. Civ. P. 23 permitted potential plaintiffs to wait to opt into a class until after a favorable decision on the merits.  That outcome was criticized, and the rule was revised to eliminate that result. Although RCFC 23 differs in some respects from Fed. R. Civ. P. 23, these circumstances counsel against granting class certification at this time:

> This situation—the potential for so-called 'one-way intervention'—aroused considerable criticism [of the pre-1966 Fed. R. Civ. P. 23] upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment

5

>without subjecting themselves to the binding effect of an unfavorable one. The 1966 amendments [to Fed. R. Civ. P. 23 (upon which RCFC 23 is modeled)] were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.

*Am. Pipe & Const. Co.*, 414 U.S. at 547 (footnotes omitted)). Moreover, the same structure exists in RCFC 23(c) as in Fed. R. Civ. P. 23(c) that elicited Justice (then Judge) Stevens' observation that "the text [of Fed. R. Civ. P. 23] certainly implies, even if it does not state expressly, that such a decision [(to certify class)] should be made in advance of the ruling on the merits." *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975).

While the "rigorous analysis" necessary to decide a class certification motion "will entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, this does not open the door to decide the merits of the case before deciding class certification, *see Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds,* 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citing *Wal-Mart,* 564 U.S. at 351 n.6)). Here, the liability phase of trial has been completed, which well exceeds "some overlap," *id.*, and instead presents the kind of one-way intervention that the Supreme Court described as "spurious," *Am. Pipe & Const.*, 414 U.S. at 545. The court therefore concludes that the late timing of plaintiffs' class certification motion counsels against certifying a class at this stage of the litigation.

### B. Rule 23's Numerosity, Commonality, Typicality, Adequacy, and Superiority Requirements

The timing of plaintiffs' class certification motion also bears heavily on the court's analysis of RCFC 23's multiple requirements, even if the court were to not treat it as an independent ground to deny certification. While plaintiffs succeed at showing numerosity, commonality, and typicality, they fail to show how the timing of their motion would not undermine the adequacy of representation and superiority of class certification at this late stage.

#### 1. Numerosity

The first prerequisite of class certification is whether "the class is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Numerosity requires that joinder be impracticable—"extremely difficult or inconvenient," *Jaynes v. United States*, 69 Fed. Cl. 450, 453-54 (2006) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil*, § 1762 (3d ed., 2005))—not "impossible," *id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "There is no set number of potential class members that must exist before a court can certify a class. Instead, a court must examine the facts of the case to determine whether the numerosity requirement has been satisfied." *Gross*, 106 Fed. Cl. at 374 (citing *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). Relevant considerations include "the number of potential class members, the geographic dispersal of the potential class members, and the size of each potential class member's claim." *Id.* (citing *King v. United States*, 84 Fed. Cl. 120, 123-24 (2008) and *Jaynes*, 69 Fed. Cl. at 454). "Joinder is considered more practicable

6

when all members of the class are from the same geographic area" and "are easily identifiable." *Jaynes*, 69 Fed. Cl. at 454 (internal quotations omitted) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-132 (1st Cir. 1985)).

Plaintiffs argue that numbers alone resolve the numerosity requirement in their favor. Pls.' Mot. at 9 (citing *Land Grantors in Henderson, Union and Webster Counties, Ky. v. United States*, 71 Fed. Cl. 614, 622 (2006) ("This fact [that the potential class included over 1,000 members] alone supports the numerosity requirement.")). Based on one of plaintiffs' expert reports, plaintiffs assert that the class includes over 10,000 potential members. *Id.* at 9 n.19 (explaining that Philip Bedient's expert report identified over 15,000 flooded upstream properties based on U.S. Army Corps of Engineer records). The government counters that plaintiffs fail to prove that so many putative class members exist. Def.'s Opp'n at 17. Nevertheless, defendant continues, other factors outweigh the number of potential class members. *Id.* at 18-19. For example, the government argues that joinder is practicable because approximately 2,000 upstream plaintiffs have already filed short-form complaints and all potential class members are in close geographic proximity to one another. *Id.* Plaintiffs reply that the fact that thousands have already filed short-form complaints does not show that joinder would prove practical for all potential plaintiffs and that many thousands of potential plaintiffs still have not filed. Pls.' Reply at 7-8.

The relevant inquiry is not merely whether a potential class involves a large number of putative members. *See Jaynes*, 69 Fed. Cl. at 454 ("While the number of class members is central to the Rule 23(a)(1) inquiry, number alone is not determinative."). Rather, the court must determine whether "the specific facts of [this] case," *Gen. Tel. Co.*, 446 U.S. at 330, make joinder extremely difficult or inconvenient. The court observes that many of the relevant factors weigh in favor of joinder, *i.e.*, most of the putative class members are located within a close geographic proximity to one another and can be easily identified via property records. *See Jaynes*, 69 Fed. Cl. at 454-55 (weighing in favor of joinder that "at least 81 percent of the class members reside within the same state" and that potential plaintiffs' identities and contact information were readily available). The sheer number of putative class members is instructive. The flooding of the Addicks and Barker Dams implicated many thousands of properties. *See In re Upstream Addicks & Barker*, 146 Fed. Cl. at 228. This case's docket demonstrates that thousands of upstream property owners have already been identified and filed short-from complaints, a fact that the government's arguments acknowledge. The court therefore concludes that plaintiffs have carried their burden and have shown that the potential class members are so numerous as to render joinder impracticable.

*2. Commonality*

The second prerequisite of class certification is comprised of three related elements: whether "there are questions of law or fact common to the class," RCFC 23(a)(2); whether "the United States has acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(2); and whether "questions of law or fact common to class members predominate over any questions affecting only individual members," RCFC 23(b)(3). The commonality requirement entails "some overlap" with the merits, *Wal-Mart,* 564 U.S. at 351, inasmuch as it requires the court to "look beyond the pleadings . . . and seek to develop an understanding of the relevant

claims, defenses, facts and substantive law," *Gross*, 106 Fed. Cl. at 377-78 (quoting *Barnes*, 68 Fed. Cl. at 494).

"Individual class members need not be identically situated to warrant a finding of commonality; 'rather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case.'" *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 788 (2011) (brackets omitted) (quoting *Barnes*, 68 Fed. Cl. at 496). "The threshold for proving commonality 'is not high.'" *Haggart v. United States*, 89 Fed. Cl. 523-33, 532 (2009) (quoting *King*, 84 Fed. Cl. at 125). Plaintiffs argue that they satisfy this requirement because each putative class member raises the same facts and legal claim, *i.e.*, that the government intentionally used potential class members' property to store detained floodwaters from the Addicks and Barker Dams and that these actions constituted a taking. Pls.' Mot. at 10-11. The government responds that the individual factual nature of each putative class member's property, *i.e.*, "extent of flooding," property elevation, property type, and "ownership interest," undermine commonality. Def.'s Opp'n at 20. The court concludes that although plaintiffs' claims are not identical, they share the essential elements of a taking caused by the government's operation of the Addicks and Barker Dams.

The government acts on generally applicable grounds when its conduct is "system-wide" or "affects all of the putative class members." *Barnes*, 68 Fed. Cl. at 496 (quoting *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001)). Plaintiffs argue that the government's operation of the Addicks and Barker Dams during Harvey affected all putative class members who experienced flooding, akin to class members in rails-to-trails takings cases where the government's decision to decommission a railway affects all those with interest in the underlying railroad right-of-way. *See* Pls.' Mot. at 11-12. The government appears to contend that the government's conduct could not be generally applicable to all putative class members because the proposed class definition is so vague as to encompass property owners who experienced no flooding. *See* Def.'s Opp'n at 20-22. The court determines that, inasmuch as putative class members experienced flooding, the government's decision to handle Harvey floodwaters at the Addicks and Barker Dams did affect all potential plaintiffs.

Additionally, "[c]lass-wide questions predominate over issues specific to individual members 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Geneva Rock*, 100 Fed. Cl. at 789 (quoting *Barnes*, 68 Fed. Cl. at 496). "This predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation' and 'is far more demanding' than the initial common-issue inquiry." *Gross*, 106 Fed. Cl. at 379 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). Plaintiffs argue that the only issue to resolve other than the government's operation of the Addicks and Barker Dams is property ownership, *see* Pls.' Mot. at 12-13, and that the nature and extent of damages are irrelevant to this question because the putative class would only cover liability issues, *id.* at 13 n.21. The government contends that the damages issues that plaintiffs would put aside are in fact critical to the analysis and prevent common issues from predominating over individual issues. *See* Def.'s Opp'n at 22-23. Generally, if governmental actions "effect a taking, then the putative

class members will be owed just compensation regardless of the specific property interest they held in the land." *Geneva Rock*, 100 Fed. Cl. at 789 (citing *United States v. General Motors Corp.*, 323 U.S. 373, 382 (1945)). Therefore, common issues of the government's liability predominate over individual issues of the nature and extent of compensation putative class members would be owed.

The court determines that plaintiffs have satisfied the commonality requirement because they share common questions of law and fact concerning generally applicable government conduct—namely, the common claim that the operation of the Addicks and Barker Dams resulted in a taking—and those liability questions predominate over individual compensation questions. The circumstance that plaintiffs focus on certifying a class for purposes only of liability nonetheless limits the significance of this determination.

### 3. Typicality

The third prerequisite of class certification is whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." RCFC 23(a)(3). Typicality, like commonality, is a "guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality is demonstrated 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Gross*, 106 Fed. Cl. at 381 (quoting *Barnes*, 68 Fed. Cl. at 498 (internal quotation marks and additional citation omitted)).

Plaintiffs assert that their arguments and success at the liability phase of the trial demonstrate that they each allege the same government conduct, state the same claim, and seek the same liability determination. *See* Pls.' Mot. at 13-14. The government counters that the bellwether plaintiffs' success during the liability phase renders them atypical of all the remaining putative class members who must still prove government liability, and once bellwethers receive a just compensation ruling at the imminent next phase of the trial, they will no longer have any interest in pursuing litigation on behalf of the class. *See* Def.'s Opp'n at 24-25. Plaintiffs argue that "exact alignment is not required between class representatives and other class members" because "the claims of the class representatives and other class members [do not] implicate a significantly different set of concerns." Pls.' Reply at 11 (emphasis omitted) (quoting *Ramona Two Shields v. United States*, 820 F.3d 1324, 1331 (Fed. Cir. 2016)).

Concerning liability, all putative class members would rely upon the same facts and legal arguments, *i.e.*, that the Harvey floodwaters retained at the Addicks and Barker Dams overflowed onto their property and that this constituted a taking. To the extent that typicality overlaps with adequacy, the government's argument that bellwether plaintiffs are no longer typical of the proposed class is not persuasive because bellwether plaintiffs, like putative class members, must continue to litigate the matter fully to arrive at a just compensation ruling. The court therefore holds that plaintiffs have carried their burden as to typicality.

*4. Adequacy*

The fourth prerequisite of class certification is whether "representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). Adequacy asks both whether proposed class counsel is qualified and capable of representing the class and whether conflicts exist between the putative class representatives and the remaining class members. *See Geneva Rock*, 100 Fed. Cl. at 790 (citing *Haggart*, 89 Fed. Cl. at 534, and *Barnes*, 68 Fed. Cl. at 499).

Plaintiffs argue that there is no conflict between putative class representatives and class members because they state the same claim for relief due to the government's operation of the Addicks and Barker Dams. *See* Pls.' Mot. at 15. They aver, moreover, that proposed class counsel is qualified and capable, relying on each proposed attorney's extensive curricula vitae and experience. *Id.* at 15-18. The government contends that the bellwether plaintiffs and putative class members would have antagonistic interests because the bellwethers would have no incentive to relitigate liability on the class members' behalf and because the government would raise collateral estoppel against the bellwethers at the subsequent class-wide liability trial, which the class members would have no incentive to oppose. *See* Def.'s Opp'n at 25-26. Defendant also argues that plaintiffs are not qualified to adequately represent the class because of the lateness of the class certification motion. *Id.* at 26-27.

The court considers timing to be critical. "[T]he named plaintiffs' failure to protect the interests of class members by moving for certification [prior to trial on liability] surely bears strongly on the adequacy of the representation that those class members might expect to receive." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977). It has been four years since these claims were first filed, and an initial deadline to move for class certification came and went. Moreover, it has been nearly two years since the bellwethers prevailed at the liability trial.

Plaintiffs argued at the hearing before the court that the timing of their class certification motion was in response to suggestions from the court that doing so before now was premature. Hr'g Tr. 12:17 to 13:1 (Nov. 29, 2021) (referring to a hearing on January 30, 2018 when supposedly "the [c]ourt deferred class treatment and told us to wait");[4] Hr'g Tr. 37:10 to 13 ("[W]hen I asked the first time about making this motion, and I think a couple times in the interim, the [c]ourt sort of asked me to wait, and, therefore, I waited.").[5] Contrary to plaintiffs' representation, however, the court sees no basis in the record to credit plaintiffs' arguments that the court instructed or asked them to delay their class certification motion. Instead, co-lead counsel indicated at a hearing on January 30, 2018 that he intended to wait until the parties had resolved jurisdictional issues and then move for class certification concurrently with the liability

---

[4] The date will be omitted from further citations to the transcript of the hearing held on November 29, 2021.

[5] Plaintiffs also argued that timing should have no bearing on the court's decision because the court has discretion "wholly and completely" to grant class certification, Hr'g Tr. 37:17 to 20, and because there would be no prejudice to the government by certifying class at this late time, Hr'g Tr. 39:7 to 10.

phase of trial. Hr'g Tr. 11:5 to 10 (Jan. 30, 2018) ("[T]hen we move into the merits briefing and all that—that sort of thing, and it's in that phase, during the merits briefing, is when we think we would also be briefing the class . . . certification."); Hr'g Tr. 11:20 to 12:2 (Jan. 30, 2018) ("[W]hen we have gone past the jurisdictional sort of step there, that's when we would anticipate raising class, . . . getting a ruling on liability and a ruling on class, hopefully concurrently."). The judge did commend plaintiffs for this plan. Hr'g Tr. 11:11 (Jan. 30, 2018) ("That makes sense."); Hr'g Tr. 12:4 to 6 (Jan. 30, 2018) ("That is a remarkably ambitious but commendable goal, and we hope we can achieve that result in terms of timing.").

"RCFC 23 is ultimately a procedural technique aimed at improving 'judicial economy and efficiency.'" *Geneva Rock*, 100 Fed. Cl. at 782 (quoting *Singleton v. United States*, 92 Fed. Cl. 78, 82 (2010) (additional citation omitted)). Lengthy delays before moving to certify the class, especially now that plaintiffs have succeeded at a merits phase of the trial, are incompatible with RCFC 23's purpose. Plaintiffs' timing thus calls into question the adequacy of the proposed representation. Plaintiffs have failed to advance any credible argument for why they delayed. The court concludes, therefore, that plaintiffs have failed to carry their burden to prove that they are qualified and capable of adequately representing the proposed class.

### 5. *Superiority*

The final requirement of class certification is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). Putative class members recount the superiority of class actions insofar as they establish that it "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (ellipses omitted) (quoting Fed. R. Civ. P. 23, Advisory Committee Note (1966 Amendment)). "Essentially, under this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed. Cl. at 499 (citing *Eisen*, 417 U.S. at 163-64 (additional citation omitted)).

Plaintiffs argue that class action is the superior approach because "an issue class would provide all [c]lass [m]embers the opportunity to avail themselves of the enormous amount of work performed during the discovery, motions practice, and trial over the past four years." Pls.' Suppl. at 4; *see also* Hr'g Tr. 38:15 to 17 ("[T]hey would be opting into a win rather than . . . deciding to go and fight the same fight again."). They continue that class action is superior to thousands of individual claims because "that process would not only waste money, time, and judicial resources, but may also lead to conflicting results." Pls.' Suppl. at 5. Plaintiffs assert that the current bellwether approach is inferior to class action because collateral estoppel cannot be used offensively against the government, rendering the bellwethers' success on the merits unavailable for the non-bellwether plaintiffs. *Id*. at 6-7. They opine moreover that earlier cases from this court that used the bellwether approach cannot prove that that approach is feasible because the facts of those prior cases are too different from the present case. *Id.* at 10-11. They also argue that the structure of this court prevents it from relying on an adapted multidistrict

litigation approach because there would be no transferor court to which the court could refer pending claims at the conclusion of the test case. *Id.* at 8-9.

The government contends that the current bellwether approach remains the superior approach because its application over the years of litigation proves its effectiveness. Def.'s Opp'n at 28. Defendant avers that resolution of the liability phase of the trial has deprived class certification of potential "economies of time, effort, or expense." *Id.* at 28-29 (quoting *Turner v. United States*, 115 Fed. Cl. 614, 618 (2014)). It claims that certifying a class at this stage of the litigation would "result in greater inefficiencies and delays . . ., create case management difficulties, and inject uncertainty shortly before [the just compensation phase of] trial." *Id.* at 29. For example, the government cites the potential need for additional briefing, *id.* at 30, the administrative complexity of presenting potential claimants with either the existing short-form complaint or the proposed class opt-in, *id.* at 31, the addition of an opt-in deadline on top of the existing statute of limitations deadline, *id.* at 32, and the potential need to certify an interlocutory appeal to permit appellate review of any class certification decision, *id.* at 32-33. Finally, defendant argues that class certification would necessarily result in a separate class-wide liability trial, which would be nearly impossible to manage. *Id.* at 33-35.

In reply, plaintiffs assert that the government's stance that it will not be bound by collateral estoppel after the bellwether trial on liability moots any arguments that the current case management approach would be superior to class certification. Pls.' Reply at 12. They reason that "the government can use its unlimited resources to put each upstream flood victim to the test of proving liability individually at a cost that will far outweigh the potential recovery." *Id.* at 13. Plaintiffs question the inefficiencies that the government identifies as either hypothetical or not actually burdensome and instead emphasize the potential cost of individual litigation should the government refuse to honor the results of the bellwether liability trial and a subsequent appeal of any just compensation awards. *Id.* at 13-15. Finally, plaintiffs contend that the close commonality of the putative class members' claims makes a class action superior to alternative case management approaches. *Id.* at 15-19.

The timing of plaintiffs' class certification motion again influences the court's analysis. The superiority prong requires the movant to prove that the benefits of class certification—*i.e.*, "economies of time, effort, and expense, and promot[ing] uniformity," *Amchem Prods.*, 521 U.S. at 615 (ellipsis omitted)—outweigh the costs thereof—"sacrificing procedural fairness or bringing about other undesirable results," *id.* (internal quotations omitted). Here, the court cannot discount that, borrowing plaintiffs' language, "opting into a win," Hr'g Tr. 38:15 to 17, would save putative class members time and money. Concurrently, the court cannot say that it is fair to the government to bind it to instantaneous class-wide adjudication of potentially thousands of plaintiffs' claims after a trial on liability on the claims of thirteen bellwether plaintiffs. *See McCarthy*, 741 F.2d at 1412 ("Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages. That is particularly true where, as here, the defendants were facing either thirty-nine named plaintiffs or a class of almost two hundred times the number of the original plaintiffs."). While the number of potential upstream plaintiffs was not unknown to the government, *see* Pls.' Mot. at 9 n.19 (citing plaintiffs' expert report that cited

government records to identify thousands of flooded upstream properties), plaintiffs engaged in the bellwether case management approach through years of motions practice, discovery, and trial on liability before moving for class certification. It would be unfair, after securing a favorable ruling at trial on liability, to permit plaintiffs to turn the tables on defendant and belatedly expand the scope of the court's liability decision from thirteen plaintiffs to thousands.

## CONCLUSION

For the reasons above, plaintiffs' class certification motion is DENIED. The parties shall continue their preparations under the current bellwether approach for the just compensation phase of the trial, which is tentatively scheduled to occur in the latter half of March 2022.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge