# In the United States Court of Federal Claims

Sub-Master Docket No. 17-9001L

(Filed: April 29, 2022)

| | |
|---|---|
| IN RE UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS<br><br>THIS DOCUMENT APPLIES TO:<br><br>ALL UPSTREAM CASES | Takings case; preparations for trial of just compensation for taking of permanent flowage easement; motions *in limine*, for protective order, and for leave to use deposition testimony at trial. |

Daniel H. Charest and E. Lawrence Vincent, Burns Charest LLP, Dallas, Texas, Charles Irvine, Irvine & Conner PLLC, Houston, Texas, and Edwin Armistead Easterby, Williams Hart Boundas Easterby, LLP, Houston, Texas, Co-Lead Counsel for Upstream Plaintiffs.

Kristine S. Tardiff, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Todd Kim, Assistant Attorney General, and Laura W. Duncan, Frances B. Morris, and Samuel R. Vice, Trial Attorneys, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## **OPINION AND ORDER**

LETTOW, Senior Judge.

In anticipation of trial, pending before the court in this Fifth Amendment takings case are eight motions *in limine*, two motions for protective order, two motions for leave to use deposition testimony, and a motion to amend plaintiffs' master complaint and designate co-owners as test property plaintiffs.  Six motions *in limine* were filed by plaintiffs—who are property owners upstream of the Addicks and Barker Dams in the Houston, Texas area that experienced flooding during Tropical Storm Harvey—and two motions *in limine* were filed by defendant United States ("the government" or "United States").[1]  Each motion *in limine* seeks to

---

[1] For convenience and clarity, plaintiffs' motions *in limine* are: Pls.' Mot. *in limine* re Frank Lucco ("Pls.' Lucco Mot."), ECF No. 451; Pls.' Mot. *in limine* re Dan Leistra-Jones ("Pls.' Leistra-Jones Mot."), ECF No. 452; Pls.' Mot. *in limine* re John Postava ("Pls.' Postava Mot."), ECF No. 453; Pls.' Mot. *in limine* re Co-Tenants ("Pls.' Co-Tenants Mot."), ECF No. 454; Pls.' Mot. *in limine* re Offsets ("Pls.' Offsets Mot."), ECF No. 455; and Pls.' Mot. *in limine* re David LaRue ("Pls.' LaRue Mot."), ECF No. 472.

exclude evidence from the trial scheduled to begin May 31, 2022.  Plaintiffs have also filed a motion for leave to use deposition testimony in lieu of live testimony at trial.  *See* Pls.' Mot. to Use Depo. Test. of Def.'s 30(b)(6) Witnesses ("Pls.' 30(b)(6) Dep. Mot."), ECF No. 468.[2]  The government has also filed two motions for protective orders to prevent plaintiffs from calling one of the government's experts in their case-in-chief, s*ee* Def.'s Mot. for Prot. Order as to Frank Lucco, ECF No. 484, and to prevent plaintiffs from calling Rule 30(b)(6) deposition designees as representatives of the United States at trial, *see* Def.'s Mot. for Prot. Order as to Rule 30(b)(6) Witnesses ("Def.'s 30(b)(6) Prot. Order Mot."), ECF No. 489.  The motions have been fully briefed, and a hearing was held on April 19, 2022.  The motions are ready for disposition.

## BACKGROUND[3]

The impetus for this case was the damage caused when the Addicks and Barker Dams "collected storm water [from Tropical Storm Harvey] in their respective reservoirs[,] extending beyond government-owned land[ and] causing private properties upstream but within the reservoir to flood from the impounded water."  *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 157 Fed. Cl. 189, 193-94 (2021) (internal alterations omitted) (quoting *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 146 Fed. Cl. 219, 227 (2019)).  Numerous private residences were flooded, both upstream and downstream of the dams.  The first related complaint was filed on September 5, 2017, with hundreds of similar cases following

---

The government's motions *in limine* are: Def.'s Mot. *in limine* re Randall Bell & Phillip Bedient ("Def.'s Bell & Bedient Mot."), ECF No. 432, and Def.'s Mot. *in limine* re Temporary Taking ("Def.'s Temp. Taking Mot."), ECF No. 486.

Another motion and cross-motion *in limine* regarded testimony related to an uncompleted study of the Buffalo Bayou, a feeder stream to the pertinent dams.  The court granted the government's cross-motion to exclude such evidence, except for final, public, or factual information.  *See* Order of April 7, 2022, ECF No. 490.

[2] Two other motions for leave to use deposition testimony were filed.  One sought to use the deposition testimony of test property plaintiff Scott Holland pursuant to Rule 34(a)(4)(C) of the Rules of the Court of Federal Claims ("RCFC").  *See* Pls.' Mot. for Leave to Use Depo. Test. of Scott Holland, ECF No. 471.  The government did not oppose the motion, and the court granted that motion, *see* Order of April 6, 2022, ECF No. 488.

The other motion seeks to use the deposition testimony of Donald Ward, an Internal Revenue Service senior appraiser, but the parties have reached an agreement that defendant will provide an authorization allowing Mr. Ward to testify.  *See generally* Pls.' Mot. to Use Dep. Test. of Donald Ward, ECF No. 467; Def.'s Resp. to Pls.' Mot. to Use Dep. Test. of Donald Ward, ECF No. 487.  In light of the government's willingness to make Mr. Ward available for live testimony, plaintiffs' motion is DENIED AS MOOT.

[3] The following recitations do not constitute findings of fact by the court.  Instead, the recited factual elements are taken from the relevant complaint and the parties' briefs and attached appendices.

suit. *Id.* at 194.  Those cases were then consolidated into one master docket, which was then divided "into two sub-master dockets—one for downstream properties and, pertinent here, one for upstream properties."  *In re Upstream*, 146 Fed. Cl. at 228 (citations omitted).

Considering the volume of cases and associated complicated issues, the upstream cases were bifurcated to deal with the issues of liability and damages separately.  *Id.*  To handle the upstream cases, the court used the multi-district litigation approach modeled upon 28 U.S.C. § 1407.  *See In re Upstream Addicks & Barker*, 157 Fed. Cl. at 194.  "In the spring of 2018, thirteen plaintiff properties were designated to serve as bellwethers for the upstream cases.  A ten-day trial was held in Houston, Texas, commencing on May 6, 2019, regarding the liability of the United States for the thirteen test properties.  In December 2019, the court found the government to be liable for a taking of a flowage easement on the bellwether properties."  *Id.* (internal alterations, quotations, and citations omitted).[4]  Specifically, the court found that plaintiffs were left with "a fee simple interest in their properties which allows them to continue their lawful use subject to the risk of occasional flooding."  *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, 148 Fed. Cl. 274, 278 (2020).  The court further held that the taking also encompassed "plaintiffs' personal property, fixtures, and improvements damaged or destroyed by the flood" as a "consequential result of the flowage easement."  *Id.*  The cases then moved forward to the discovery phase for the just compensation portion of the litigation.

Expert discovery has closed, and the parties have entered the pre-trial stage for the just compensation portion of the bifurcated litigation.  Each party now seeks to exclude certain evidence from the just compensation trial.  The specifics of each motion will be outlined *infra*.  The court's task in addressing the motions is eased by the fact that some of the challenged witnesses testified at the liability trial previously held.

## ANALYSIS

### A.   Expert Testimony

The Federal Rules of Evidence govern the admissibility of evidence in this court.  *See* 28 U.S.C. § 2503(b) ("The proceedings of the Court of Federal Claims shall be in accordance with . . . the Federal Rules of Evidence.").  When evaluating the admissibility of expert testimony, Federal Rule of Evidence 702 is controlling and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact . . . ; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[4] In December 2021, the court denied plaintiffs' motion to certify a class as to liability, finding that the timing of the motion post-adjudication on the liability issue and the failure to satisfy the requirements of RCFC 23 made class certification inappropriate.  *See In re Upstream Addicks & Barker*, 157 Fed. Cl. at 197, 202.

Fed. R. Evid. 702(a)-(d).  Pursuant to Federal Rule of Evidence 104(a), a trial judge must determine "at the outset" whether an expert witness is qualified or whether his or her opinions constitute admissible evidence.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).  "These matters should be established by a preponderance of proof."  *Id.* at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

In addition to its reliability, the court must also ensure the offered expert testimony is relevant.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert*, 509 U.S. at 589.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Rule 702 further requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Even in the face of evidence that is both reliable and relevant, "[t]he court may exclude [such] evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  While concerns of misleading the jury "are of lesser import in a bench trial, . . . the *Daubert* standards of relevance and reliability for [expert] evidence must nevertheless be met."  *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002).

Both parties have tendered motions to exclude testimony from several expert witnesses. The court will address the motions regarding each of these challenged witnesses in turn.

## 1. *Evidence and testimony from Dr. Randall Bell.*[5]

The government challenges the testimony of one of plaintiffs' experts, Dr. Randall Bell. Dr. Bell is an appraiser whose expert report purports to "assess the impact, if any, of the U.S. Army Corp of Engineers flowage easement as a result of Hurricane Harvey flooding on single-family residential and condominium properties that were developed behind (upstream) the Addicks and Barker Dams."  Pls.' Opp'n to Def.'s Bell & Bedient Mot., Ex. A at 21-22, ECF No. 433-1.  It further states that it is a "mass appraisal" report.  *Id.* at 21.  The government challenges the relevancy of Dr. Bell's opinion to the task before the court, *i.e.*, to determine "the measure of just compensation due for the non-categorical taking of a permanent flowage easement on the six bellwether properties."  *In re Upstream*, 148 Fed. Cl. at 278.  Specifically, the government contends that Dr. Bell's opinion provides nothing more than an "unapplied mass appraisal formula" that goes beyond the scope of the trial by attempting to introduce a formula to be used against the government "on a mass basis in the future."  Def.'s Bell & Bedient Mot. at 5, 9 (emphasis omitted).  Plaintiffs maintain that Dr. Bell's opinion is relevant to the determination of just compensation because he applied his formula to the six bellwether properties, producing a "range applicable to properties including (but not limited to) the six specific bellwether [t]est

---

[5] Dr. Bell also prepared a rebuttal report in response to the government's experts.  The government's motion to exclude is limited to Dr. Bell's primary report and associated testimony. Def.'s Bell & Bedient Mot. at 4 n.1.

[p]roperties" that represents the "detrimental effect on the value" of the properties.  Pls.' Opp'n to Def.'s Bell & Bedient Mot. at 10, ECF No. 433.

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 (relevant evidence is admissible unless barred by some source of law).  Relevancy has a low threshold.  *See Daubert*, 509 U.S. at 587 ("The Rule's basic standard of relevance thus is a liberal one.").  Despite this low threshold, offered evidence must still be of consequence and of use to determining the action; Dr. Bell's opinion runs the risk of being unduly cumulative.  His opinion does not provide definitive guidance to the court on the value of the six bellwether properties before or after the flooding event.  Rather, Dr. Bell provides a formula and a range of potential values for the properties at issue.  Plaintiffs argue that it was impossible for Dr. Bell to provide exact numbers because the exact language of the easement has not been defined, *see* Pls.' Opp'n to Def.'s Bell & Bedient Mot. at 8, but this did not stop plaintiffs' other retained appraisers from providing exact values, *see* Def.'s Reply to Def.'s Bell & Bedient Mot. at 10 n.6, ECF No. 439.  Nonetheless, the threshold for relevancy is a low one, and the court cannot say Dr. Bell's testimony is wholly irrelevant where it provides some guidance on the issue of compensation.

Nonetheless, the court is empowered by the Federal Rules of Evidence to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time."  Fed. R. Evid. 611(a)(2).  RCFC 16 similarly gives the court the power to "establish[] a reasonable time limit on the time allowed to present evidence."  RCFC 16(c)(2)(O).  Specifically, "[j]udges may impose limits only on specific components of the presentation of the case, such as the time that counsel may use for direct or cross-examination of [a] specified expert."  3 James W. Moore *et al.*, *Moore's Federal Practice* § 16.77 (3d ed. 2022).[6]  Other courts have properly exercised this power to place a time limit on the direct examination of a specific witness.  *See, e.g.*, *Clem v. Corbeau*, 98 Fed. App'x 197, 205 (4th Cir. 2004) (trial court did not abuse its discretion by imposing a forty-five-minute time limit on direct examination of witness); *Watkins v. Pinnock*, 802 Fed. App'x 450, 460 (11th Cir. 2020) (trial court did not abuse its discretion by imposing time limits on *pro se* plaintiff's direct examinations in order to "properly manage the flow of the trial"); *Rohrbaugh v. Owens-Corning Fiberglas Corp.*, 965 F.2d 844, 847 (10th Cir. 1992) (trial court did not abuse its discretion by limiting "direct and cross-examination of expert witnesses to thirty and forty-five minutes, respectively").  Such limitations are allowable so long as the court remains "flexible" in order to "exercise reasonable control."  *Clem*, 98 Fed. App'x at 205; Fed. R. Evid. 611.

---

[6] This observation was made within the context of discussing the court's ability to address certain matters at the final pretrial conference.  *See id.*  In light of the discretion given the court by Federal Rule of Evidence 611, the court sees no reason that the court's ability to impose specific time limitations should be constrained to the final pretrial conference.

Inasmuch as RCFC 16 mirrors Fed. R. Civ. P. 16, the rules should be interpreted *in pari materia*.

Plaintiffs state in their Just Compensation Trial Witness List that they estimate their examination of Dr. Bell to span two and a half hours.  Pls.' Just Compensation Trial Witness List at 15, ECF No. 469-1.  Due to the cumulativeness of Dr. Bell's testimony as well as the unconventional nature of his methodology (which may be of limited value), direct-and-redirect examination of Dr. Bell will be prospectively limited to one hour.  Such a limitation will ensure plaintiffs are able to present the distinct aspects of Dr. Bell's views while simultaneously allowing the court to forestall cumulative testimony and to ensure the proper flow of trial.

   *2.  Evidence and testimony from Dr. Phillip Bedient.*

   The government next challenges the testimony of Dr. Phillip Bedient, an expert in "hydrology, hydraulics, and flood plain analysis," Def.'s Bell & Bedient Mot. at 15 (internal quotations omitted), who is expected to provide an opinion on "how frequently will the government exercise the truly expansive scope of rights it has taken."  Pls.' Opp'n to Def.'s Bell & Bedient Mot. at 11 (emphasis omitted).  The government argues that such testimony is irrelevant because it "does not speak to the market value of the bellwether properties" and that the "statistical analysis was unavailable and unknown to market participants in the residential housing market at or near the date of the taking."  Def.'s Bell & Bedient Mot. at 15, 17. Plaintiffs counter that Dr. Bedient's testimony provides an opinion on the government's frequency of use of the easement, which affects the value of the bellwether properties.  *See* Pls.' Opp'n to Def.'s Bell & Bedient Mot. at 11-12.

   The Uniform Appraisal Standards for Federal Land Acquisitions (the "Yellow Book") (which govern federal appraisals of land) provide that if "fear of a 'hazard would affect the price a knowledgeable and prudent buyer would pay to a similarly well-informed seller, diminution in value caused by that fear may be recoverable as part of just compensation.'"  *Yellow Book* § 4.6.2.2 at 158 (2016) (quoting *United States v. 760.807 Acres in Honolulu*, 731 F.2d 1443, 1447 (9th Cir. 1984)).  "There must be evidence 'connecting the safety issue to the real estate market.'"  *Id.* (quoting *United States v. 87.89 Acres in Merced Cty.*, 530 F.3d 899, 905 (9th Cir. 2008)).

   This court previously found "data relating to the risk of flood" to be discoverable.  *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, No. 17-9001, 2020 WL 3513552, at *3 (Fed. Cl. June 29, 2020).  Plaintiffs bear the burden of proving market value of the bellwether properties and are entitled to present evidence on factors that may affect that value, including market knowledge of the risk of flooding.[7]  The value of the properties will be affected by the frequency of flooding and the knowledge regarding that risk; as such, plaintiffs are entitled to present evidence on the frequency of the government's "use" of the permanent flowage easement.  Accordingly, Dr. Bedient's testimony will be allowed at trial.

   Therefore, the government's motion *in limine* to exclude the testimony of Drs. Bell and Bedient is GRANTED IN PART and DENIED IN PART.  The testimony of Dr. Bell will be

----

   [7] In fact, Dr. Bedient's evidence regarding the risk of flooding and the market's knowledge of that risk is not so different from that of an expert proffered by the government, Frank Lucco, discussed *infra*.

limited to one hour in light of the cumulative nature of his testimony due to the projected testimony of other appraisers and the unusual nature of his methodology.  The court will allow Dr. Bedient's testimony.

### 3.  Evidence and testimony from Mr. Frank Lucco.

First in a series of motions from plaintiffs is a motion *in limine* to exclude the testimony of a government expert, Frank Lucco.  *See generally* Pls.' Lucco Mot.  In spite of this motion, plaintiffs have listed Mr. Lucco as a witness they will call at trial in their case-in-chief.  *See* Pls.' Just Compensation Trial Witness List at 15.  In response to this designation, the government has filed a motion for a protective order to prevent plaintiffs from calling Mr. Lucco as a witness in their case-in-chief.  *See* Def.'s Mot. for Prot. Order as to Frank Lucco.  The court will first address the admissibility of Mr. Lucco's testimony before addressing whether plaintiffs may call a government expert as their own witness.

### (i.)  Plaintiffs' motion *in limine*.

Mr. Lucco is an expert appraiser for the government who plans to provide an opinion on the value of "the flowage easement as described by the [c]ourt in its rulings," "market awareness," and on the value of the properties through "comparable sales from post-Harvey flooded homes in the upstream flood pool area."  Def.'s Resp. to Pls.' Lucco Mot. at 2, ECF No. 465.  Plaintiffs move to exclude Mr. Lucco's opinion for being irrelevant and unreliable.  Pls.' Lucco Mot. at 1.  Plaintiffs contend that Mr. Lucco failed to value the rights taken by the easement and that the sales used by Mr. Lucco as comparable sales are not reliable because they occurred before the court's ruling on liability.  *Id.* at 1-2, 4.  The government maintains that, although the comparable sales occurred prior to the liability ruling, the market was well aware of the effects of Hurricane Harvey on the area and that Mr. Lucco conducted an independent study to evaluate market awareness on the issue.  Def.'s Resp. to Pls.' Lucco Mot. at 8-9.

Expert testimony must be both relevant and reliable.  *Daubert*, 509 U.S. at 579.  As an initial matter, Mr. Lucco's opinion is relevant as it provides an evaluation of the "after" value of the bellwether properties.  Even so, plaintiffs contend that "[Mr.] Lucco's assessment of a decrease in value attributable to market participants' 'expectations about future weather and flooding events' is not a valuation of the rights taken by the government's permanent flowage easement."  Pls.' Lucco Mot. at 2 (emphasis omitted).  Yet, the value of Mr. Lucco's opinion to the court is not so different from that of plaintiffs' expert, Dr. Bedient.  While not a one-to-one comparison, both experts purport to testify to the effect of the flooding risk and awareness of it on the market value of the bellwether properties.  *Compare* Pls.' Opp'n to Def.'s Bell & Bedient Mot. at 11-12, 14 ("Dr. Bedient's opinions will inform the [c]ourt about important market-influencing factors.") *with* Def.'s Resp. to Pls.' Lucco Mot. at 9 ("Mr. Lucco selected comparable sales with market awareness in mind and performed an additional market analysis to confirm his ultimate conclusion.").  Where plaintiffs are allowed to present evidence of fear of future flooding as affecting the market, the government's evidence on the same topic will be relevant.  As such, Mr. Lucco's testimony passes muster on that ground.

Plaintiffs also challenge the reliability of Mr. Lucco's comparable sales approach on multiple grounds. Plaintiffs argue that is it impossible to use the comparable sales approach because no such comparable sales exist. Pls.' Lucco Mot. at 2-3. According to plaintiffs, because the exact language of the easement has not been defined, it is impossible to find a comparable sale. *Id.* at 3. Particularly of concern to plaintiffs is that all of the selected sales used by Mr. Lucco occurred before the court's ruling on December 17, 2019, that the government had taken a permanent flowage easement. *Id.* at 4. Plaintiffs contend that it would be impossible for willing buyers and sellers to have the requisite knowledge of the easement for it to affect market value when the language of the easement has not yet been drafted. Pls.' Reply to Pls.' Lucco Mot. at 3, ECF No. 478. The government counters that "all of the selected comparable sales experienced flooding from the dams during the Harvey event and are within the Harvey flood pool upstream." Def.'s Resp. to Pls.' Lucco Mot. at 8. Further, the government argues that "nearly all of the sales he selected as comparable sales had some form of specific disclosure of property flooding due to the Harvey event in the property marketing or disclosure documentation," *id.* at 9, and that "Mr. Lucco researched the general information that was available to the public and real estate market about the flooding from the dams during Harvey and the related ongoing flood risk," *id.* at 12.

The court finds plaintiffs' emphasis on the lack of exact easement language to be misplaced. The court found that the "government's actions relating to the Addicks and Barker Dams and the attendant flooding of plaintiffs' properties constituted a taking of a flowage easement under the Fifth Amendment." *In re Upstream*, 146 Fed. Cl. at 264. The court further clarified that "the easement should be defined by reference to the elevation of the pools at their highest level on August 30, 2017, *viz.*, 101.6 feet in Barker and 109.1 feet in Addicks," *In re Upstream*, 148 Fed. Cl. at 278 (citing *In re Upstream*, 146 Fed. Cl. at 241), and that plaintiffs were left with "a fee simple interest in their properties which allows them to continue their lawful use subject to the risk of occasional flooding caused by the operation of the Addicks and Barker Dams," *id.* These rulings are sufficient to inform the scope of the easement for Mr. Lucco's research and for the public. The court is skeptical that having exact language of an easement would be any more informative to an average willing buyer or seller than the language currently embodied in the court's opinions. Rather, it is more likely that the public would be best informed via the very sources Mr. Lucco relied on: social and news media, among other sources, more accessible to a lay person. *See* Def.'s Resp. to Pls.' Lucco Mot. at 12-13 (stating Mr. Lucco relied on a "myriad [of] sources such as the media, online resources, government reports and meetings, information and outreach about this lawsuit, and flood damages to homes and flood closures of roads, schools and more"). Moreover, as the court noted at the hearing, the state of Texas implemented a statute for the very purpose of informing the public of the flood

risk.  Hr'g Tr. 8:16-23 (April 19, 2022).[8]  These sources are reliable indications of the market's awareness.[9]

The court shares plaintiffs' skepticism over the timing of the comparable sales relied on by Mr. Lucco.  All of the properties were sold prior to the court's finding of a taking and all but one were sold prior to the implementation of Texas's notice statute.  Hr'g Tr. 8:16 to 9:8.  Where the sales are otherwise similar to the bellwether properties in that they all experienced flooding from the Harvey event, the court opines that the timing of the sales goes to the weight the court may or may not give Mr. Lucco's opinion when making an award but does not preclude his opinion altogether.

The court will ultimately decide how much weight to give Mr. Lucco's opinion but finds that it is generally relevant and reliable.  However, the court will again exercise its power under Federal Rule of Evidence 611 to exert reasonable control of the trial and limit Mr. Lucco's testimony to three hours in light of the court's concern regarding the scope of his projected testimony and the comparability to that of Dr. Bedient, who is scheduled to testify for one

---

[8] The State of Texas legislature amended its law governing disclosures to be made by sellers of residential properties to require disclosure if the property is, among other things, "located wholly [or] partly in a reservoir."  Tex. Rev. Prop. Code § 5.008.  "Flood pool" is statutorily defined to mean "the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers."  Tex. Rev. Prop. Code § 5.008.  "Reservoir" is defined as "a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land."  Tex. Rev. Prop. Code § 5.008.  The addition of this language went into effect September 1, 2019.  S.B. 339, 86th Leg., Reg. Sess. (Tex. 2019).

Reportedly, the flooding resulting from Hurricane Harvey—the cause of the flooding at issue in this case—was what prompted legislators to pass this amendment to the state's seller's disclosure notice.  *See, e.g.*, *In Texas, Home Sellers Must Now Disclose More About the Risk of Flooding*, National Public Radio, (October 27, 2019), https://www.npr.org/2019/10/27/772996585/in-texas-home-sellers-must-now-disclose-more-about-the-risk-of-flooding.

The date will be omitted from future citations to the hearing held April 19, 2022.

[9] The government points to the case *Vaizburd v. United States* as proof that the comparable sales approach can be used without having the exact language of the easement.  *See* Def.'s Resp. to Pls.' Lucco Mot. at 17-21.  In that case, the Court of Appeals for the Federal Circuit upheld the adoption of the government's appraisal of properties using the comparable sales approach despite there being no easement language for those properties because the easement was found simultaneously in an opinion of this court.  *See Vaizburd v. United States*, 384 F.3d 1278, 1283 n.5, 1284-85 (Fed. Cir. 2004).  This case supports that court's conclusion that the exact language of an easement is not necessary, particularly where numerous forms of notice are available to the market.

hour.[10]  As such, plaintiffs' motion *in limine* to exclude Mr. Lucco's testimony is GRANTED IN PART AND DENIED IN PART.

      (ii.)  Motion for a protective order.

      Despite their motion *in limine* to exclude Mr. Lucco's testimony, plaintiffs have listed him as a witness they will call and have subpoenaed him.  *See* Def.'s Mot. for Prot. Order as to Frank Lucco at 3.  Federal Rule of Evidence 611 requires the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence."  "An expert witness—retained by a party through private, voluntary agreement—is ordinarily not the proper object of a subpoena." *Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 383 (2010) (citing *Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997) ("[A] professional witness may not generally be compelled to testify as an expert at the request of a private litigant, as such testimony is a matter of contract or bargain."); *see also Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972)).  However, "a judge may authorize a subpoena to an expert witness." *R.K. v. Sec'y of the Dep't of Health & Human Servs.*, No. 03-0632V, 2015 WL 10911950, at *24 (Fed. Cl. Sept. 28, 2015), *aff'd*, 671 Fed. App'x 792 (Fed. Cir. 2016).  "Routine use" of subpoenas to an opposing party's expert has been held to be "inappropriate" and subverts the role of Rule 26.  *Pope v. City of New York*, No. 10 Civ. 4118, 2012 WL 555997, at *1 (S.D.N.Y. Feb. 10, 2012) (discussing Fed. R. Civ. P. 26).[11]

      Other courts have "exercised [their] discretion to allow a party to call an opposing party's expert witness during their case in chief."  *Rosa-Melendez v. Invacare Corp.*, 709 F. Supp. 2d 132, 134-135 (D.P.R. 2010).  Some courts have found that the "weight of authority favors allowing [a party] to introduce the opinion testimony of [the other party's] expert."  *De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc.*, 851 F. Supp. 2d 850, 853 (E.D. Pa. 2012) (citing *Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996); *Penn Nat'l Ins. Co. v. HNI Corp.*, 245 F.R.D. 190 (M.D. Pa. 2007); *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236 (N.D. Iowa 1996)); *see also Nat'l R.R. Passenger Corp. v. Certain Temp. Easements Above the R.R. Right of Way in Providence, R.I.*, 357 F.3d 36, 42 (1st Cir. 2004).  While some courts disfavor allowing such tactics, there is no "broad rule that automatically bars a party from calling a witness the opposing party designated." *Griffin v. Biomat USA, Inc.*, No. 1:19-cv-604, 2022 WL 424964, at *2 (M.D. Ala. Feb. 10, 2022).  Despite having paid to retain Mr. Lucco as an expert, the government does not have "a proprietary right to [his] evidence."  *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C 1983).

      The court will strike a balance.  Plaintiffs will not be allowed to call Mr. Lucco in their case-in-chief so as not to interfere with the purposes of Rule 26 or the government's ability to

---

    [10] The government stated in its Just Compensation Trial Witness List that it expects the testimony of Mr. Lucco to take six hours.  Def.'s Just Compensation Trial Witness List at 3, ECF No. 508.  The court finds allowing half that time to be a reasonable step to ensure the proper flow of the trial.

    [11] Inasmuch as RCFC 26 mirrors Fed. R. Civ. P. 26, the rules should be interpreted *in pari materia*.

present a fulsome defense.  But, to allow plaintiffs the opportunity to fully explore Mr. Lucco's testimony on points where they bear the burden of proof, cross-examination will not be limited to the topics covered in direct examination.  As such, the government's motion for a protective order as to Mr. Lucco is GRANTED IN PART AND DENIED IN PART.

### B.   Testimony Regarding Potential Offsets

At the liability phase of litigation, the court found that "the government's actions relating to the Addicks and Barker Dams and the attendant flooding of [bellwether] plaintiffs' properties constituted a taking of a flowage easement under the Fifth Amendment." *In re Upstream*, 146 Fed. Cl. at 264.  The impending trial seeks to award just compensation, or "the fair market value of the property on the date it [wa]s appropriated." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984).  When making a just compensation award, the Supreme Court has held that certain offsets may be deducted.  Specifically, the amount which "specially and directly increased" the value of the remainder property after a partial taking can be offset against the just compensation award.  *Bauman v. Ross*, 167 U.S. 548, 574 (1897).  The Court of Appeals for the Federal Circuit has defined such direct and special benefits to be those "which arise directly and proximately to the remaining land as a result of the public work on the part taken, due to the peculiar relation of the land in question to the public work." *Hendler v. United States*, 175 F.3d 1374, 1380 (Fed. Cir. 1999).  General benefits (or those benefits "that are more or less common to all lands in the vicinity of the land taken," *id.*) on the other hand will not be offset.  *Hendler v. United States*, 38 Fed. Cl. 611, 617 (1997) ("Special benefits are deducted from any compensation due, and general benefits are not."), *aff'd*, 175 F.3d at 1386.

A string of motions *in limine* seeks to exclude the government's experts that offer testimony relating to what plaintiffs argue are irrelevant general benefits which should not be offset against any just compensation award.  Specifically, plaintiffs seek to exclude the testimony of Dan Leistra-Jones and David LaRue, as well as testimony relating to Federal Emergency Management Agency ("FEMA") and Internal Revenue Services ("IRS") programs.  *See generally* Pls.' Offsets Mot., Pls.' Leistra-Jones Mot., and Pls.' LaRue Mot.  The court will first address the admissibility of offset testimony generally and then turn to the projected testimony of each challenged expert.

### 1.   Offset testimony.

Allowing any just compensation award to be reduced by specific offsets prevents plaintiffs from receiving a double recovery from administrative processes and the judicial process.  *See United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 633 (1961) ("The guiding principle of just compensation is reimbursement to the owner for the property interest taken . . . . [While plaintiff] 'must be made whole . . . [he or she] is not entitled to more.'" (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934))); *Cardiosom, L.L.C. v. United States*, 656 F.3d 1322, 1328-29 (Fed. Cir. 2011).  As the finding of any such offset results in the reduction of a just compensation award, the government bears the burden of proving the applicability of any alleged offsetting benefit and its amount.  *CCA Assocs. v. United States,* 91 Fed. Cl. 580, 613-614 (2010), *aff'd in part, rev'd in part*, 667 F.3d 1239, 1245 (Fed. Cir. 2011), *cert. denied*, 568 U.S. 940 (2012).

Plaintiffs seek to exclude testimony and evidence "aiming to have [the c]ourt reduce or 'offset' the [alleged] just compensation awards owed [p]laintiffs." Pls.' Offset Mot. at 1. They argue that benefits received by bellwether plaintiffs are not direct and thus do not qualify to be deducted from any just compensation award and that for the court to determine and assess alleged offsetting benefits received from FEMA or IRS would violate the separation of powers by having the court sit in the position of an administrative agency. *Id.* at 5-6. The government argues in opposition that certain payments and deductions received by plaintiffs are in fact direct payments that should be offset from any just compensation award and that the court's consideration of such offsets does not run afoul of the separation of powers. Def.'s Resp. to Pls.' Offsets Mot. at 9, ECF No. 463.

Both parties noted that the court has previously expressed skepticism that certain "collateral benefit[s] would be considered as a relevant consideration in the calculation of just compensation." *In re Upstream*, 2020 WL 3513552, at *2. Regardless of the court's skepticism, the government bears the burden of proof on this issue, and the court will not interfere with that burden by deciding the general versus direct nature of a benefit prior to hearing pertinent evidence. This is not to say the government is entitled to put on whatever evidence it pleases but merely that the blanket exclusion sought by plaintiffs of evidence and testimony as to alleged offsets is improper.

Plaintiffs' contention that for the court to consider and value any offsets would be a violation of the separation of powers also fails. This court has exclusive jurisdiction over Fifth Amendment takings claims where the amount sought from the government is $10,000 or more. 28 U.S.C. §§ 1346(a)(2); 1491(a)(1). Offsetting special benefits is required by binding precedent, *see Bauman*, 167 U.S. at 574. It would contravene this court's jurisdiction—and binding precedent—to bar the court from making the necessary findings to make a proper award. It is not for the agency to determine whether a benefit should be offset against a just compensation award; it is for the court to decide. While plaintiffs suggest that some agencies, like the IRS, can "subsequently reclaim some or all of th[e] amounts" it determines to have been improperly paid, Pls.' Offsets Mot. at 7, that is a separate and distinct power. Although plaintiffs' concern may be a "double subtraction" as opposed to the government's concern of a double recovery, the record of this case does not suggest that the government argues that any benefits received were improperly paid to plaintiffs but rather that those benefits should be offset against the just compensation award. It will not be a violation of the separation of powers for this court to fulfill its role as trier of fact and arbiter of law as it relates to any alleged special benefits. As such, plaintiffs' motion *in limine* to exclude offsetting benefits testimony as a general matter is DENIED.

The government, however, will not be given free rein to present such testimony. Its witnesses must still satisfy the requirements of the Federal Rules of Evidence. As such, the court will address plaintiffs' specific motions in turn.

### 2. Evidence and testimony from Dr. David LaRue.

Dr. David LaRue was retained by the government to "identify and estimate the federal income tax benefits derived by those [p]laintiffs who claimed a casualty loss deduction for their Hurricane Harvey-related flood damages." Def.'s Resp. to Pls.' LaRue Mot. at 2, ECF No. 491. The government intends for Dr. LaRue to testify to his methodology for determining the savings plaintiffs received and why those savings should be considered compensation paid to plaintiffs by the government—and therefore should be offset from any just compensation award. *Id.* Plaintiffs seek to exclude this testimony as an irrelevant consideration of general benefits (which Dr. LaRue did not calculate) that may not be offset from any just compensation award, and they also challenge the reliability of Dr. LaRue's calculations. Pls.' LaRue Mot. at 1-2. The government contends that Dr. LaRue's testimony is relevant to explaining the methodology for determining the tax savings plaintiffs received, why those savings should be regarded as just compensation paid, and that Dr. LaRue's testimony is reliable because it is based on plaintiffs' discovery productions in this case. Def.'s Resp. to Pls.' LaRue Mot. at 2-3.

"Offsetting benefits, if there are any, must be established by the government." *CCA Assocs.*, 667 F.3d at 1245. As previously discussed, common general benefits available to everyone will not be offset from a just compensation award. *See Bauman*, 167 U.S. at 574-75. Under Internal Revenue Code §165(c)(3), an individual may claim a casualty loss if it arises from a qualified disaster, such as a "storm." 26 U.S.C. § 165(c)(3). These loss deductions are available to anyone who experiences such a loss, a point on which plaintiffs and Dr. LaRue agree. *See* 26 U.S.C. § 165; *see also* Pls.' LaRue Mot., Ex. C (LaRue Dep. Test.) 31:15 to 32:21, ECF No. 472-3 (LaRue: "[Casualty loss deduction provisions] are general provisions that are available to all taxpayers without discrimination."). The court has long expressed skepticism about the government's position in this regard. *In re Upstream*, 2020 WL 3513552 at *2 ("The court is skeptical that [a casualty loss deduction] would be considered as a relevant consideration in the calculation of just compensation."). The court remains unconvinced and will exclude Dr. LaRue's testimony.

Plaintiffs correctly argue that casualty loss deductions are a general benefit that cannot be deducted from a just compensation award. As the Federal Circuit has stated: "[S]pecial benefits are those which inure specifically to the landowner who suffered the partial taking and are associated with the ownership of the remaining land. In contrast, benefits that inure to the community at large are considered general." *Hendler*, 175 F.3d at 1380 (internal citation omitted). The casualty loss deduction is a general benefit in that the community at large may claim it if they face a casualty. With relation to the taking of a permanent flowage easement, where the benefit is not "associated with the ownership of the remaining land," *Hendler*, 175 F.3d at 1380, but was instead conditioned on the effects of earlier acquisition of inadequate land at the time of construction of dams measured against a meteorological event, the deduction cannot be said to be a special benefit; that the flowage easement is in some ways conditioned on the occurrence of such flooding does not change the nature of the deduction. Neither can it be said to be special when it is not specific to these particular plaintiffs but is available to any citizen who experiences similar losses. The court is unconvinced that tax savings related to loss of a property interest should be deducted from any award, particularly where plaintiffs may be required to address any award in conjunction with future taxes.

Because the casualty loss deduction and any associated interest are not special benefits, the court finds Dr. LaRue's testimony to be irrelevant to determining what just compensation may be awarded to plaintiffs for the government's taking of a permanent flowage easement. Plaintiffs' motion *in limine* to exclude Dr. LaRue's testimony is GRANTED.

### 3. Evidence and testimony from Mr. Dan Leistra-Jones.

Plaintiffs move to exclude the testimony of Mr. Dan Leistra-Jones, a government expert with "experience in financial, policy, and economic analysis." Pls.' Leistra-Jones Mot. at 1. Mr. Leistra-Jones intends to offer an opinion on "[w]hether the plaintiffs received any prior payments or benefits from the United States that relate directly to the losses they are claiming in this case from flooding related to Hurricane Harvey." Def.'s Resp. to Pls.' Leistra-Jones Mot., Ex. A at 1, ECF No. 464-1. Unlike Dr. LaRue, Mr. Leistra-Jones purports to provide a comprehensive analysis of benefits received by plaintiffs that the government alleges should be offset against any just compensation award. Def.'s Resp. to Pls.' Leistra-Jones Mot. at 5-6, ECF No. 464. As has been stated, the government bears the burden on the issue of proving offsets. *CCA Assocs.*, 667 F.3d at 1245. And as the court has stated in a prior hearing, "the [c]ourt is almost invariably willing to allow a party to try to prove its case." Hr'g Tr. 16:9-19 (Sept. 4, 2020). Consistent with this view, the court will allow Mr. Leistra-Jones's testimony, save any portions related to the work of Dr. LaRue, which will be excluded. The court makes no determination at this time on whether any of the payments about which Mr. Leistra-Jones will testify are general or special benefits. Plaintiffs may raise any concerns as to Mr. Leistra-Jones's methodology or other aspects of his report on cross-examination.

Plaintiffs motion *in limine* to exclude the testimony of Mr. Leistra-Jones is GRANTED IN PART AND DENIED PART. Mr. Leistra-Jones will be allowed to testify as to direct benefits received by the bellwether plaintiffs, excluding any portions relating to tax implications of casualty losses that were to have been covered by testimony of Dr. LaRue.

### C. Evidence and testimony from Mr. John Postava

Plaintiffs seek to exclude government witness John Postava, *see generally* Pls.' Postava Mot., a licensed property and authorized National Flood Insurance Program flood claims adjuster, who reportedly will focus on valuation of personal property damaged or lost as a result of the flooding, *see* Def.'s Resp. to Pls.' Postava Mot. at 3, ECF No. 460. Plaintiffs allege his testimony is irrelevant because in their view his analysis "is nothing more than his opinion that the information he reviewed regarding the property taken by the government . . . would be insufficient to support an insurance claim." Pls.' Postava Mot. at 1 (emphasis omitted). The government counters that Mr. Postava's testimony is relevant and that as a rebuttal expert his testimony will be defined by plaintiffs' expert's testimony. Def.'s Resp. to Pls.' Postava Mot. at 2-4.

When it found the government liable for a permanent flowage easement, the court concluded that "the taking also encompassed—as a consequential result of the flowage easement taken—plaintiffs' personal property, fixtures, and improvements damaged or destroyed by the flood event." *In re Upstream*, 148 Fed. Cl. at 278. Therefore, testimony relating to the valuation

of plaintiffs' personal property is relevant to the just compensation trial. *See also* Hr'g Tr. 69:24 to 70:2. Plaintiffs contend that Mr. Postava's testimony adds nothing of value because he did not challenge the methodology of plaintiffs' experts. Because Mr. Postava in essence is scheduled to rebut plaintiffs' evidence of the value of personal property lost, it would be premature for the court to exclude his opinion before plaintiffs' own expert's testimony of value has taken place.

To the extent plaintiffs challenge Mr. Postava's methodology of applying "insurance standards," those challenges do not speak to admissibility but to the weight (if any) the court should give Mr. Postava's testimony. *See Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (where an expert's "credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility"). In fact, it is flaws in plaintiffs' own expert testimony that Mr. Postava allegedly offers to address: "[Plaintiffs' personal property expert] testified he did not follow what [Mr. Postava] consider[s] to be the typical methodology when preparing a personal property inventory. . . . [Without further documentation, plaintiffs' expert] could not have calculated reasonable replacement cost values for the items listed on the [p]laintiffs' inventories." Def.'s Resp. to Pls.' Postava Mot., Ex. A at 11 (Expert Report of John Postava), ECF No. 460-1.[12]

The court determined that personal property damage was a consequential result of the flowage easement taken by the government. The plaintiffs bear the burden of proving the value of those losses. *See Hedstrom Lumber Co., Inc. v. United* States, 7 Cl. Ct. 16, 28 (1984). The government is entitled to rebut their evidence. Plaintiffs' motion *in limine* to exclude the testimony of John Postava is DENIED.

### D.  Testimony Regarding the Exclusion of Co-Tenants for the Bellwether Properties

Before the court are two motions relating to co-tenants of the bellwether properties. Plaintiffs first moved to prevent the government from offering evidence "regarding any [c]o-[t]enant's ownership interest." Pls.' Co-Tenants Mot. at 1. Plaintiffs averred that this motion was in response to the government's contention that "the [c]ourt should only determine just compensation for the selected bellwether plaintiffs that is proportionate with their ownership interests." *Id.* Plaintiffs then filed a motion to amend the master complaint to add the co-tenants of the six bellwether properties (or alternatively to join them). Pls.' Mot. to Amend the Master Complaint (Pls.' Mot. to Amend"), ECF No. 493. Beyond adding the co-tenants as plaintiffs generally, plaintiffs seek to have the co-tenants designated as bellwether test plaintiffs as well. *Id.* at 1.

### 1.  Motion to amend the complaint or alternatively for joinder.

Plaintiffs seek leave to file an amended master complaint to add Oscar Quintero, Alexander Popovici, Manviner Grewal, and Fatima Holland as co-plaintiffs and as bellwether

---

[12] If Mr. Postava offers testimony that there is not enough information to value plaintiffs' personal property losses, his testimony would extend beyond challenging the "veracity" of plaintiffs' statements, as plaintiffs contend.

test plaintiffs.[13]  RCFC 15(a)(2) gives the court leave to allow a party to amend its pleading "when justice so requires."  The applicable six-year statute of limitations has not expired, *see* 28 U.S.C. § 2501, and the non-named co-owners are entitled to file their own claims for the government's taking of a permanent flowage easement on their property.  Importantly, the government does not oppose the addition of the co-tenants as plaintiffs for these reasons.  Def.'s Resp. to Pls.' Mot. to Amend at 1, ECF No. 494.  Contrastingly, the government does oppose the designation of the co-tenants as bellwether test plaintiffs.  *Id.*  For the reasons stated, the court will allow plaintiffs to amend their complaint to add the listed co-tenants, but the co-tenants will not be designated as bellwether test plaintiffs and their cases will be administratively stayed along with the other non-bellwether plaintiffs.

Plaintiffs argue that it would not be prejudicial to the government to add the co-tenants as bellwether plaintiffs and that no new discovery would be required.  Pls.' Mot. to Amend at 7-9.  Plaintiffs correctly state that the government's definition of "plaintiff" or "test plaintiff" included "each and every individual, entity, or party who claims a [p]roperty interest in the [t]est [p]roperties" and "spouses not named in the litigation."  Pls.' Mot. to Amend at 3 n.1 (emphasis omitted).  Nonetheless, they fail to acknowledge that they "object[ed] to the extent that the definition attempt[ed] to solicit responses or require [p]laintiff to obtain responses from individuals or entities that are not parties to this litigation."  Def.'s Resp. to Pls.' Mot. to Amend, Ex. 2 at 2, ECF No. 494-1.  Plaintiffs cannot have it both ways by claiming that the bellwether plaintiffs' responses in discovery do not apply to (then) non-parties and now claim that such responses do apply to the co-tenants.  While any future discovery as to the co-tenants may be redundant, the government is not required to take plaintiffs' assurances on this issue.  Discovery has not occurred as to the co-tenants, and it would be prejudicial to the government to allow the co-tenants to be added as bellwether plaintiffs at this late stage.  Therefore, plaintiffs' motion to amend their master complaint is GRANTED IN PART AND DENIED IN PART.  Plaintiffs may file their amended complaint adding the co-tenants as plaintiffs, but the co-tenants will not be designated as bellwether plaintiffs.

Remaining is plaintiffs' motion *in limine* to prevent the government from introducing "evidence regarding any [c]o-[t]enant's ownership interest."  Pls.' Co-Tenants Mot. at 1.  The government opposes this motion, arguing that evidence regarding the co-tenants is relevant to determining the value owed to the bellwether plaintiffs—whom the government argues are the only plaintiffs properly before the court at this time who are eligible to receive any award from the court.  Def.'s Resp. to Pls.' Co-Tenants Mot. at 3, ECF No. 461.  Both parties point to the unit rule, which requires "that real estate be valued in respect to its gross value as a single entity as if there was only one owner. . . . [T]he manner in which the land is owned or the number of owners should not affect the value of the land."  *Childers v. United States*, 116 Fed. Cl. 486, 502 (2013) (quoting 4 *Nichols on Eminent Domain* § 13.01[16]).  The government agrees "that under the unit rule, the bellwether properties must be appraised as if they were under 'unified control

---

[13] Plaintiffs also seek to add an explanatory paragraph to the complaint detailing that incorrect property descriptions for the Lakes on Eldridge Community Association were included in the original complaint and that corrected descriptions were admitted during the liability phase of the trial without objection.  Pls.' Mot. to Amend at 2.  The government does not object to this addition.  *Id.*

and ownership without competing partial interests.'"  Def.'s Resp. to Pls.' Co-Tenants Mot. at 3 (quoting *Childers*, 116 Fed. Cl. at 505).  That is exactly how the court shall proceed in the first instance.

Where the parties disagree is whether the court must apportion the just compensation award subject to the bellwether plaintiffs' interests in the taken properties.  Both parties point to the court's holding in *Technical College of the Low Country v. United States*:

> The division of the proceeds between [the co-owners] is, according to the unit rule, not a factor in determining the value of the land taken.  Further, it is well settled that the Court of Federal Claims "does not have subject matter jurisdiction to entertain controversies between private parties."  However, [the co-owner] has not appeared in this case, and [plaintiff] has not demonstrated it is entitled to recover damages representing compensation for the [co-owner's] interest that was taken.

145 Fed. Cl. 408, 433 (2019) (internal citations omitted) (quoting *Hufford v. United States*, 85 Fed. Cl. 607, 608 (2009)).  Plaintiffs seem to concede in their reply brief that the proper approach is for the court to "(1) value both the larger parcels as to which a taking ha[s] been found according to their highest and best uses without regard to the co-ownership issue, and (2) adjust both the before and after values to reflect the co-ownership issue."  Pls.' Reply to Pls.' Co-Tenants Motion at 3, ECF No. 496 (internal quotations and alterations omitted) (quoting *Technical College*, 145 Fed. Cl. at 433-34).  The court has admitted the co-tenants as plaintiffs above, but they are not properly before the court as bellwether plaintiffs.  While plaintiffs urge the court to defer the determination of the exact value owed to each test property plaintiff to a later date, *see id.* at 2, the court sees no reason to proceed in such a manner.  In the circumstances, evidence regarding the co-tenants' ownership interests will be relevant to the award, and the government will be entitled to rebut plaintiffs' evidence on the value owed to each plaintiff by pointing to evidence of a co-ownership interest.[14]  Plaintiffs' motion *in limine* to exclude evidence regarding co-tenant interests in the bellwether properties is DENIED.

### E.  Evidence Relating to the Alleged "Temporary Taking"

The government seeks to exclude "any and all testimony and evidence relating to [p]laintiffs' 'temporary lost use of their real property.'"  Def.'s Temp. Taking Mot. at 1 (quoting Pls.' Mem. of Contentions of Fact and Law ("Pls.' Mem.") at 25, ECF No. 466).  In its opinion finding the government liable for a flowage easement, the court stated:

> Plaintiffs have alleged three separate takings: (1) a temporary, categorical, physical taking for the temporary flooding; (2) a permanent, categorical, physical taking for the destruction of plaintiffs' personal property; and (3) a permanent, non-categorical, physical taking for the flowage easements on each property.  The court,

---

[14] This disagreement between the parties may have little ultimate effect.  The government may not be in any position to deny the co-tenants their portion of the just compensation award when this court will have adjudicated the value of the property and found the portion of the interest they are entitled to by apportioning the bellwether plaintiffs' interests in this action.

> however, finds these distinctions unnecessary, as the first two alleged takings are simply the consequential result of the third. Thus, the court here will apply its analysis to the consideration of whether the government's actions constituted a physical, permanent, non-categorical taking for a flowage easement.

*In re Upstream*, 146 Fed. Cl. at 247 n.17 (internal citations omitted). The court ultimately found that "[t]he government, through its construction, maintenance, and operation of the Addicks and Barker Dams in the past, present, and future, has taken a permanent flowage easement on plaintiffs' properties." *Id.* at 250. The court explicitly stated that the easement "encompassed— as a consequential result of the flowage easement taken—plaintiffs' personal property, fixtures, and improvements damaged or destroyed" by the flooding resulting from Hurricane Harvey. *In re Upstream*, 148 Fed. Cl. at 278.

The government is correct that the court did not find a temporary taking of property by the government had occurred. But, the court did recognize that certain property losses by plaintiffs were the "consequential result" of the government's taking of a flowage easement. Evidence regarding the "temporary dispossession of [plaintiffs'] property rights measured by the fair rental value of the property for the reasonable period [plaintiffs] w[ere] deprived of its use," Pls.' Mem. at 26, is included in the consequential results of the government's taking of a permanent flowage easement. Just as plaintiffs' personal property would not have been damaged or destroyed but for the government's taking, it is also true that but for the government's taking, plaintiffs would not have been displaced from their properties—temporarily or otherwise. "[F]or all that the [g]overnment takes it must pay." *United States v. Dickinson*, 331 U.S. 745, 750 (1947). This edict remains true, regardless of the fact that the flooding was a temporary aspect of a permanent taking. As such, evidence of a temporary dispossession is admissible, but the government is correct that such evidence does *not* support the finding a temporary taking. Therefore, the government's motion *in limine* to exclude evidence regarding temporary takings is GRANTED IN PART AND DENIED IN PART. Plaintiffs may present evidence consistent with the court's ruling on losses that are the consequential result of the government's taking but may not present evidence of a taking the court did not find existed.

### F.   Use of Deposition Testimony of the United States' 30(b)(6) Witnesses[15]

Rule 30(b)(6) requires that a party serving a notice under this rule "describe with reasonable particularity the matters for examination." In turn, the named organization "must then designate one or more . . . persons who consent to testify on its behalf." *Id.* "The purpose of Rule 30(b)(6) is to ensure that [entities] supply relevant information to opposing counsel relating to corporate practices, policies, procedures and actions." *Ierardi v. Lorillard, Inc.*, Civ. A. No. 90-7049, 1991 WL 66799, at *2 (E.D. Pa. Apr. 15, 1991) (discussing Fed. R. Civ. P. 30(b)(6)).[16] Plaintiffs issued a Notice of Rule 30(b)(6) Deposition of the United States of

---

[15] The court has granted one other motion to use deposition testimony and denied another such motion. *See supra* n.2.

[16] RCFC 30(b)(6) mirrors Fed. R. Civ. P. 30(b)(6), and the rules should be interpreted *in pari materia*.

America on April 15, 2020, seeking the designation and production of witnesses for forty-nine topics.  *See* Pls.' Am. Sec. Not. of Rule 30(b)(6) Depo., ECF No. 291-1.  The government filed a motion for a protective order, claiming the topics were overly broad among other things, which the court granted in part and denied in part.  *See In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, No. 17-9001, 2020 WL 3513552 (Fed. Cl. June 29, 2020).  In that prior order, the court limited the topics to the easement at issue in the case, to the six bellwether properties, and required the government to provide updated information as necessary.  *Id.* at *1-2.  The government designated four witnesses to testify as Rule 30(b)(6) witnesses: Robert Thomas, III, Jeremy Creech, Paula Johnson-Muic, and Ronald Wanhanen.  Pls.' 30(b)(6) Depo. Mot. at 2.

Plaintiffs have moved for leave to admit the deposition testimony of these four witnesses in lieu of live testimony at trial.  *See generally* Pls.' 30(b)(6) Dep. Mot.  The government opposes this motion, alleging that plaintiffs "seek to admit testimony—as binding Rule 30(b)(6) admissions—that was elicited in response to questions outside the scope of the noticed topics." Def.'s Resp. to Pls.' 30(b)(6) Dep. Mot. at 1, ECF No. 495.  Beyond this motion to admit testimony, plaintiffs have also attempted to serve a subpoena on the government as well as each of the persons the government designated under Rule 30(b)(6).  In response, the government has also filed a motion seeking a protective order to "preclud[e] [p]laintiffs from calling the United States or previous Rule 30(b)(6) designees in a representative capacity; preclude[e] [p]laintiffs from enforcing related subpoenas; [or], in the alternative, limit[] any testimony by such witnesses to matters on which they can testify based on personal knowledge."  Def.'s 30(b)(6) Prot. Order Mot. at 10.  The court will address each of these motions in turn.

(i.)    Motion for leave to use deposition testimony.

RCFC 32(a)(3) provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under RCFC 30(b)(6)."  The government states that it "does not oppose the use of deposition testimony taken under RCFC 30(b)(6) at trial so long as the testimony is limited to topics described with the necessary particularity."  Def.'s Resp. to Pls.' 30(b)(6) Dep. Mot. at 2. Rather than belabor the point, the court exercises its discretion to admit the deposition testimony subject to the government's objections, which will be addressed as needed at trial.  Therefore, plaintiffs' motion for leave to use the deposition testimony given by witnesses designated by the government pursuant to Rule 30(b)(6) is GRANTED, subject to the government's preserved objections to be addressed at trial.

(ii.)    Protective order.

In addition to seeking leave to use deposition testimony, plaintiffs have served five subpoenas on the government.  Def.'s 30(b)(6) Prot. Order Mot. at 2.  One subpoena was issued to the United States itself, and the remaining four were issued to Ronald Wanhanen, Robert Thomas, III, Paula Johnson-Muic, and Jeremy Creech as "representative[s] of the U[nited] S[tates]."  *Id.* at 3.  The government seeks a protective order to preclude the United States or previous Rule 30(b)(6) designees from being called in a representative capacity and to prevent plaintiffs from enforcing the subpoenas.  *Id.* at 10.

Rule 45 of the Court of Federal Claims states that "[e]very subpoena must . . . command each *person* to whom it is directed" to appear." RCFC 45(a)(iii) (emphasis added). The United States is not a person for the purpose of Rule 45. The general statutory presumption is that "person" does not include the government. *Al Fayed v. C.I.A.*, 229 F.3d 272, 273-74 (D.C. Cir. 2000). This presumption has been extended to Rule 45 of the Federal Rules of Civil procedure. *Truex v. Allstate Ins. Co.*, 233 F.R.D. 188, 191 (D.D.C. 2006) (quashing a Rule 45 subpoena issued to FEMA for failure to "overcome the presumption that 'person' within Rule 45 does not include the government").[17] The court adopts this general presumption and finds that plaintiffs have not overcome the presumption to prove that Rule 45 of the Rules of the Court of Federal Claims does not include the government within the term "person."[18] Therefore, the subpoena to the United States itself is improper and will not be enforced.

The subpoenas issued to the individual persons are a different matter. Regardless of the permissibility of such subpoenas, the court finds them to be improperly issued. "Serving a subpoena requires delivering a copy to the named person." RCFC 45(b)(1). Here, the named individuals were Ronald Wanhanen, Robert Thomas, III, Paula Johnson-Muic, and Jeremy Creech, but the accepting party was counsel for the United States. Def.'s 30(b)(6) Prot. Order Mot. at 2. Service on the United States when attempting to compel these individuals to testify—in whatever capacity—is not sufficient to satisfy Rule 45. *See Dopson-Troutt v. Novartis Pharmas. Corp.*, 295 F.R.D. 536, 537-38 (M.D. Fla. 2013) (finding insufficient service where subpoenas for individuals were served to corporate registered agent instead of to the named individual). While the issuing party in *Dopson* may have been seeking to compel testimony in the persons' individual capacities and plaintiffs here seek testimony from the listed individuals in their representative capacity, Rule 45 does not provide for such nuance, and the court will not read such nuance into the rules.

Yet the government has stated it will call three of the four named individuals, *see* Def.'s Just Compensation Trial Witness List at 2, 4, and in that connection the court finds it prudent to consider persuasive precedent from another jurisdiction. The Fifth Circuit has opined on the issue of a witness previously designated under Rule 30(b)(6) taking the stand at trial:

> Although there is no rule requiring that the corporate designee testify "vicariously" at trial, as distinguished from [] the rule 30(b)(6) deposition, if the corporation makes the witness available at trial he should not be able to refuse to testify to matters as to which he testified at the deposition on grounds that he had only corporate knowledge of the issues, not personal knowledge.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). The Federal Rules of Evidence govern, particularly the rules governing hearsay. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. App'x 899, 907-08 (5th Cir. 2010). Consistent with this view, the court

---

[17] Inasmuch as RCFC 45 mirrors Fed. R. Civ. P. 45, the rules should be interpreted *in pari materia*.

[18] This notion is particularly true when considering how the Rules of the Court of Federal Claims diverge from the Federal Rules of Civil Procedure to account for its special jurisdiction over the United States government. *See, e.g.*, RCFC 12(a)(1)(A) (time to answer).

will not prevent plaintiffs from inquiring into matters discussed at the individuals' depositions, so long as the evidentiary rules otherwise allow it.  Should the government open that door, the court will not close it.

The court further notes that with the admission of the deposition testimony, the issue should be adequately addressed without further action. Therefore, the government's motion for a protective order as to its Rule 30(b)(6) designees is GRANTED IN PART AND DENIED IN PART.

## CONCLUSION

For the reasons stated, the numerous motions before the court are resolved as follows:

(1) The government's motion *in limine* as to Drs. Bell and Bedient is GRANTED IN PART AND DENIED IN PART.  The testimony of Dr. Bell will be admitted but limited to one hour.  The testimony of Dr. Bedient will be admitted.

(2) Plaintiffs' motion *in limine* regarding Frank Lucco is GRANTED IN PART AND DENIED IN PART.  Mr. Lucco's testimony will be admitted but limited to three hours.

(3) The government's motion for a protective order regarding Frank Lucco is GRANTED IN PART AND DENIED IN PART.  Plaintiffs may not call Mr. Lucco in their case-in-chief, but the scope of plaintiffs' cross-examination will not be limited by the scope of direct examination.

(4) Plaintiffs' motion *in limine* regarding testimony about offsets in general is DENIED.

(5) Plaintiffs' motion *in limine* regarding Dr. David LaRue is GRANTED.

(6) Plaintiffs' motion *in limine* regarding Dan Leistra-Jones is GRANTED IN PART AND DENIED IN PART.  Mr. Leistra-Jones will be permitted to testify but may not testify as to opinions of Dr. LaRue.

(7) Plaintiffs' motion *in limine* regarding John Postava is DENIED.

(8) Plaintiffs' motion to amend the master complaint is GRANTED IN PART AND DENIED IN PART. Plaintiffs may file their amended complaint, adding co-tenants as plaintiffs, but the co-tenants will not be designated as bellwether plaintiffs.

(9) Plaintiffs' motion *in limine* to exclude testimony regarding ownership interests in the bellwether properties is DENIED.

(10) The government's motion *in limine* for a protective order regarding evidence of a temporary taking is GRANTED IN PART AND DENIED IN PART.  Plaintiffs may present evidence regarding losses that are a consequential result of the permanent flowage easement but may not present evidence of a temporary taking generally.

(11) Plaintiffs' motion to admit the deposition testimony of the government's Rule 30(b)(6) witnesses is GRANTED, subject to the government's objections to be addressed at trial.

(12) The government's motion for a protective order regarding subpoenas issued to it and the Rule 30(b)(6) witnesses is GRANTED IN PART AND DENIED IN PART.  The court will not enforce the subpoenas but will not bar the pertinent witnesses from testifying to things already addressed in their deposition testimony, subject to the Federal Rules of Evidence.

It is so **ORDERED**.


s/ Charles F. Lettow
Charles F. Lettow
Senior Judge